IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

EDGAR HERNANDEZ SOTO, §
§
*Petitioner*, §
§
v. §    No. 1:26-CV-01073-DAE
§
BLANCHE, *et al*., §
§
*Respondents*. §

## ORDER

Before the Court is Petitioner Edgar Hernandez Soto's ("Petitioner")

Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, (Dkt. # 1).  The Court

finds this matter suitable for disposition without a hearing.  After careful

consideration of the parties' briefings and the relevant law, the Court **GRANTS** the

Petition for Writ of Habeas Corpus (Dkt. # 1) for the reasons that follow.

## FACTUAL BACKGROUND

Petitioner Hernandez Soto is a citizen of Mexico who is currently

being detained at the T. Don Hutto Detention Center in Taylor, Texas.  (Dkt. # 1 at

3.)  Around 2002, when he was approximately two years old, Petitioner entered the

1

United States without inspection.[1]  (See Dkts. ## 1 at 4; 1-1 at 2; 5-2.)  Since then, he has resided continuously in the United States.  (Dkt. # 1 at 4.)

In his over two decades in the country, Petitioner has built a life here. (Dkt. # 1 at 4–5.)  He is married and has three children with his wife, all of whom are U.S. Citizens.  (Id.)  Prior to his detention, Petitioner was employed primarily in masonry, though he also worked in construction or doing ranch work occasionally.  (Id.)  Petitioner's entire recollected life is in the United States.  (Id.) Having entered the country as an infant, the United States is the only country he has ever known.  (Id. at 12–13.)

In September 2025, Petitioner was arrested in Fredericksburg, Texas, outside of his wife's separate residence.  (Dkt. # 1 at 4–5.)  Petitioner writes that the arrest occurred after a neighbor called police because they did not recognize Petitioner at the late hour.  (Id.)  Petitioner alleges that, upon the sheriff's arrival, he pointed out that the sheriff's body camera was not functioning and requested to speak to the sheriff's supervisor.  (Id. at 5.)  Petitioner was subsequently arrested for resisting arrest and public intoxication.  (Id.)  The prosecution later dropped the public intoxication charge, and on January 28, 2026, Petitioner pleaded guilty to

---

[1] Petitioner writes that he has lived in the United States since he was approximately two years old, (Dkt. # 1 at 4), and he is now 26 years old, (Dkt. # 5-2).  Petitioner's Notice to Appear alleges that Petitioner entered the country without being admitted or paroled and that he entered at an unknown date and unknown location.  (Dkt. # 1-1 at 2.)

the resisting arrest charge.  (Id.; Dkt. # 5-1.)[2]  Petitioner was sentenced to time served, and his case was closed.  (See id.)  In his over twenty years in the country, Petitioner's only other interaction with law enforcement was in or around 2017 when he was stopped and found to be without a license.  (Dkt. # 1 at 5.)  Outside of these two interactions, Petitioner appears to have no other criminal history.  (See Dkts. ## 1 at 13 (writing that Petitioner has lived without incident in this country for twenty years outside of these two encounters); Dkt. # 5 at 4.)

   After being released from county custody at the end of January 2026, Petitioner was detained by Immigration and Customs Enforcement ("ICE") officials and transferred to the T. Don Hutto Residential Center.  (Dkts. ## 1 at 5; 5 at 4; 5-2.)  Since then, Petitioner has remained detained without the opportunity for a bond hearing, a period of over four months.  (Id.)

---

[2] The parties submitted evidence to the Court regarding this charge.  In the Affidavit for Probable Cause for Arrest Without Warrant, the arresting officer stated that when he attempted to arrest Petitioner for public intoxication, Petitioner "tensed up and attempted to pull away."  (Dkt. # 9-2.)  The officer further wrote that he tried to place Petitioner into custody several times, but Petitioner was "actively resisting and not wanting to comply."  (Id.)  After getting one handcuff on, the officer was able to use "pain compliance" to get both handcuffs on Petitioner.  (Id.)  There is no allegation in any of the documents submitted to the Court that Petitioner used force on the officer beyond trying to pull away from the officer as he attempted to put handcuffs on Petitioner.  (See Dkts. ## 9-1 (Case Report); 9-2 (Affidavit for Probable Cause).)  There is also no allegation that the officer was injured in any way from the encounter.  (See id.)

PROCEDURAL HISTORY

On April 25, 2026, Petitioner filed his habeas petition.  (Dkt. # 1.)  On April 28, 2026, this Court ordered Respondents Todd Blanche, United States Attorney General; Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"); Todd M. Lyons, Director of U.S. Immigration and Customs Enforcement ("ICE"); Miguel Vergara, Field Office Director, San Antonio Field Office, Immigration and Customs Enforcement; and Charlotte Collins, Warden of the T. Don Hutto Detention Center (collectively, "Respondents") to show cause within three days as to why the petition should not be granted.  (Dkt. # 3.) Respondents Todd Blanche, Markwayne Mullin, Todd Lyons, and Miguel Vergara (herein, "Federal Respondents")[3] timely filed a response to the Petition on April 30, 2026, (Dkt. # 5), and Petitioner filed a reply, (Dkt. # 6).  The parties also filed multiple supplemental briefs in response to the Courts' orders.  (Dkts. ## 9; 10; 13; 14.)

LEGAL STANDARD

A district court may grant a writ of habeas corpus if a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241.  The habeas petitioner "bears the burden of proving that he is

_____

[3] Respondent Collins, Warden of the T. Don Hutto Detention Center, has not joined the response.

being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." Villanueva v. Tate, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (internal citation and quotations omitted). "A court considering a habeas petition must 'determine the facts, and dispose of the matter as law and justice require.'" Id. (quoting 28 U.S.C. § 2243).

DISCUSSION

In his Petition, Petitioner challenges his mandatory detention under 8 U.S.C. § 1225 as a violation of his Fifth Amendment due process rights, the Immigration and Nationality Act ("INA"), and the Administrative Procedure Act ("APA"). (Dkt. # 1 at 10–15.)

I.    Subject Matter Jurisdiction

As an initial matter, the Court finds that it has jurisdiction over this case for the same reasons stated in previous orders. Campuzano v. Noem, No. 1:25-cv-1715-DAE, 2026 WL 90062 (W.D. Tex. Jan 6, 2026); Fabian-Granados v. Bondi, No. 1:25-cv-2068-DAE, 2026 WL 90061 (W.D. Tex. Jan. 8, 2026); Silva v. Bondi, No. 1:25-cv-2155-DAE, 2026 WL 90060 (W.D. Tex. Jan. 12, 2026). The Court also finds that, to the extent an administrative exhaustion requirement would normally apply in this situation, "[b]ecause Respondents argue the detention of Petitioner is mandatory, claiming no one, including the [immigration judge], can

5

review the detention issue, any attempt to require Petitioner to exhaust any administrative remedies [would be] futile." See Lorenzo C. P., v. Noem, No. 1:25-CV-181, 2025 WL 3684859, at *5 (S.D. Tex. Oct. 31, 2025); see also Shi v. Lyons, No. 1:25-CV-274, -- F. Supp. 3d --, 2025 WL 3637288, at *4 n.6 (S.D. Tex. Dec. 12, 2025); (Dkt. # 6 at 1 (asserting that Petitioner is ineligible for bond before an immigration judge)).

II.     The Merits of the Petition for Writ of Habeas Corpus

        Having concluded that it has jurisdiction over Petitioner's claims, the Court turns to the merits of Petitioner's habeas petition. Because the Court finds that Petitioner's detention violates his right to procedural due process under the Fifth Amendment of the United States Constitution, it does not reach Petitioner's other bases for relief.[4] The Court's analysis proceeds in two steps: first, the Court

---

[4] To the extent Federal Respondents argue that the Fifth Circuit's recent decision in Buenrostro-Mendez v. Bondi, --- F.4th ---, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026), prevents this Court's review of the Petitioner's due process claims, the Court, like other courts that have considered the question, finds such an argument unpersuasive. See Valencia Reyes v. Noem, et al., No. SA-25-CA-01921-XR, Dkt. # 7, at *6–8 (W.D. Tex. Feb. 25, 2026) (collecting cases). Indeed, the Fifth Circuit's decision was limited only to that petitioner's statutory interpretation arguments and did not reach any issue of whether a petitioner's detention violated the Fifth Amendment. See Buenrostro-Mendez, 2026 WL 323330. The Government acknowledged as much in their oral arguments by stating: "We have one issue before the Court now: the statutory question. . . . There's not, in other words, a due process claim here." Oral Argument, Buenrostro-Mendez, 2026 WL 323330, at 44:56–45:11 (5th Cir. Feb. 3, 2026), available at https://www.ca5.uscourts.gov/OralArgRecordings/25/25-20496_2-3-2026.mp3.

will discuss whether and to what extent procedural due process applies to Petitioner; and second, the Court will analyze whether Petitioner's due process rights were violated.

First, the Court concludes that Petitioner is entitled to due process protections.  The Fifth Amendment's Due Process Clause prevents the Government from "depriv[ing]" any "person . . . of liberty . . . without due process of law." U.S. CONST. amend. V.  This right is not limited to United States citizens; noncitizens are similarly entitled to due process under the Fifth Amendment. Trump v. J. G. G., 604 U.S. 670, 673 (2025);  Demore v. Kim, 538 U.S. 510, 523 (2003). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001) (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).  Petitioner's case does not materially differ from those that this Court has recently considered and determined that procedural due process protections apply.[5]  See Gomez-Gonzalez v. Vergara, No. 5:26-CV-598-DAE, 2026 WL 594364 (W.D. Tex. Feb. 27, 2026); Acosta Espana v. Ortega,

---

[5] To the extent that Federal Respondents argue that Petitioner is not able to bring a procedural due process claim due to the Fifth Circuit's unpublished opinion in Wekesa v. United States Att'y, No. 22- 10260, 2022 WL 17175818 (5th Cir. Nov. 22, 2022), the Court does not agree.  Federal Respondents admit that Petitioner is being detained pursuant to 8 U.S.C. § 1225(b)(2) and not 8 U.S.C. § 1226(c). (Dkt. # 13 at 2.)  Any citation to Wekesa, then, is therefore inapposite.

7

No. 1:26-CV-00300-DAE, 2026 WL 594362 (W.D. Tex. Mar. 2, 2026); Guzman

Sanchez v. Bondi, No. 1:26-CV-00379-DAE, 2026 WL 594365 (W.D. Tex. Feb.

27, 2026); JAIRO ENRIQUE RAGA ALEMAN, Petitioner, v. HOMAN, et al.,

Respondents. Additional Party Names: Beatriz Adriana Aleman Lopez, No. 1:26-

CV-00529-DAE, 2026 WL 752450 (W.D. Tex. Mar. 16, 2026).  Accordingly, for

the reasons described in the Court's prior orders, Petitioner may bring a procedural

due process claim.

Having found that Petitioner is entitled to due process protection

under the Fifth Amendment, the Court turns to whether Petitioner's arguments are

meritorious.  "The fundamental requirement of due process is the opportunity to be

heard 'at a meaningful time and in a meaningful manner.'"  Mathews, 424 U.S. at

333 (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).  "To determine

whether a civil detention violates a detainee's due process rights, courts apply the

three-part test set forth in Mathews[.]"  Martinez v. Noem, No. 5:25-cv-1007-JKP,

2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025).  Those factors are: (1) "the

private interest that will be affected by the official action"; (2) "the risk of an

erroneous deprivation of such interest through the procedures used, and the

probable value, if any, of additional or substitute procedural safeguards"; and (3)

"the Government's interest, including the function involved and the fiscal and

administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

The first factor weighs heavily in Petitioner's favor. "'The interest in being free from physical detention' is 'the most elemental of liberty interests.'" Martinez v. Noem, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025) (quoting Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004)). In this case, Petitioner lived his life in the United States for over twenty years prior to his recent detention. He entered the country as a child and knows no other home. He has three U.S. Citizen children. "The Supreme Court has repeatedly affirmed that '[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'" Hernandez-Lara v. Lyons, 10 F.4th 19, 27 (1st Cir. 2021) (citing United States v. Salerno, 481 U.S. 739, 755 (1987)). This interest "deserves great weight and gravity" and thus weighs heavily in Petitioner's favor. See Vieira, 806 F.Supp.3d at 701.

On the second factor, courts consider "whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." Martinez v. Noem, 2025 WL 2598379, at *3 (quoting Gunaydin v. Trump, 784 F.Supp.3d 1175, 1187 (D. Minn. 2025)). Here, there is a high risk of erroneous deprivation of Petitioner's liberty since he is being detained without the opportunity for an

individualized bond hearing, depriving him of the ability to contest the reasonableness of his detention.[6]  See Vieira, 806 F.Supp.3d at 701 ("The risk lies in the automatic continued deprivation of liberty . . .").  There would be significant value added by additional safeguards, such as a bond hearing or pre-detention notice, that would reduce the likelihood of an erroneous loss of liberty.  Thus, this factor also weighs in Petitioner's favor.

The third factor is the Government's interest.  See Mathews, 424 U.S. at 335.  The Government has a legitimate interest "in ensuring that noncitizens appear for their removal hearings and do not pose a danger to the community." Lopez-Arevelo, 801 F.Supp.3d at 686–87.  But such an interest could be adequately protected through individualized bond hearings—process that the Government finds unnecessary.  As another court in this District stated: "Respondents make no meaningful representation that the burden of providing this additional increment of process is beyond their ability.  Instead, they only maintain that due process does not require it." Valencia Reyes v. Noem et al., No. 5:25-cv-

---

[6] This is so notwithstanding Petitioner's recent conviction for resisting arrest.  The question before the Court is what process is due to Petitioner before he can be detained without an opportunity for a bond hearing.  Here, there has been no determination made before a neutral arbiter that Petitioner poses a danger to the community or a flight risk.  Nor has Petitioner been afforded any process by which to challenge such a determination.  The risk of erroneous deprivation, then, is high.

1921-XR, at *25 (W.D. Tex. Feb. 25, 2026).  Accordingly, as applied to this Petitioner, this factor is neutral.

In weighing all three factors, the Court finds the scale tips in Petitioner's favor; thus, Petitioner's detention without an opportunity to challenge his detention through an individualized assessment violates his right to procedural due process under the Fifth Amendment of the United States Constitution.

III.    Mandatory Detention Under 8 USC § 1226(c)

In their response, Federal Respondents also argue that, in addition to being subject to mandatory detention under 8 U.S.C. § 1225, Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c) in connection with Petitioner's conviction for resisting arrest.  (Dkt. # 5 at 12–13.)  Accordingly, they contend, the Petition must be denied.  (See id.)  This argument is unconvincing.

According to Federal Respondents, because the INA is not a mutually exclusive grid of statutes, a noncitizen can be subject to multiple detention provisions at the same time.  (Dkt. # 13 at 2–4.)  The Court does not disagree that a noncitizen can theoretically be subject to multiple provisions of the INA. However, the fact that a noncitizen can be *subject to* multiple provisions does not by itself establish that a noncitizen can also be *detained under* multiple provisions simultaneously.  The Court sees no support for this conclusion, and Federal Respondents cite none beyond a single district court opinion that provides little

11

reasoning and which the Court does not find persuasive.  (See Dkt. # 13 at 2 (citing

Rojas-Palomino v. Bondi et al, No. 1:26-cv-00551-ADA, Dkt. # 6, at *2 n.1 (W.D.

Tex. Apr. 7, 2026)).)

Moreover, even if the Court were to accept that a noncitizen could be

detained simultaneously under multiple provisions of the INA, the Court would

harbor grave concerns about the constitutionality of such a regime.  Indeed, as

Federal Respondents themselves note, the two provisions at issue, 8 U.S.C.

§ 1225(b) and 8 U.S.C. § 1226(c), operate differently, have entirely different

provisions for release, and have distinct mechanisms for challenging the

provision's application.  (See Dkt. # 13 at 3 n.3); 8 U.S.C. § 1226(c)(4) (describing

the limited circumstances that noncitizens held under § 1226(c) may be released);

Jennings v. Rodriguez, 583 U.S. 281, 283 (2018) ("There is also a specific

provision authorizing temporary parole from § 1225(b) detention "for urgent

humanitarian reasons or significant public benefit," § 1182(d)(5)(A) . . . That

express exception implies that there are no other circumstances under which aliens

detained under § 1225(b) may be released."); Demore v. Kim, 538 U.S. 510, 514

n.3 (2003) (describing Joseph hearings, the mechanism by which individuals can

challenge the applicability of § 1226(c)).  If the government could hold noncitizens

pursuant to both § 1225(b) and § 1226(c) at the same time, noncitizens would be

left to guess which release provision governs their detention, what procedures are

available to them to secure their release, and how they could challenge the application of the specific detention authority to them.  This outcome is inconsistent with the fundamental principles of due process, and the Court therefore rejects it.  See Mathews v. Eldridge, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'").

Regardless, in this case, Federal Respondents admit that Petitioner is being detained pursuant to 8 U.S.C. § 1225(b)(2) and not 8 U.S.C. § 1226(c). (See Dkt. # 13 at 2 (providing that "Petitioner is being detained pursuant to 8 U.S.C. § 1225(b)(2)").)  Accordingly, any argument that Petitioner is also "subject to" detention under § 1226(c) is irrelevant to the Court's analysis here.

IV.    Appropriate Relief

On the issue of appropriate relief, the Court is persuaded that it need not depart from the "typical remedy" in habeas cases challenging the lawfulness of detention, which "is, of course, release."  See Munaf v. Geren, 553 U.S. 674, 693 (2008).  Further, ordering a bond hearing under these circumstances would require the Immigration Judge to do that which he believes he lacks authority to do following Matter of Yajure Hurtado, 29 I&N Dec. 216, 220 (BIA 2025).  The Court instead finds that the more appropriate remedy here is release.  See Azua-Zuniga v. Bondi et al., No. 1:26-cv-287-RP (W.D. Tex. Feb. 20, 2026) (finding support for

13

the same remedy under similar circumstances); Valencia Reyes, No. SA-25-CA-01921-XR, Dkt. # 7, at 25 (same); Longoria Mendoza, No. 5:26-CV-0728-JKP, Dkt. # 9, at *17–18 (same).

Indeed, the Court notes its agreement that bond hearings are "no substitute for the requirement that ICE engage in a 'deliberative process prior to, or contemporaneous with,' the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." Cruz-Reyes v. Bondi, No. 5:26-cv-60, 2026 WL 332315, at *6 (S.D. Tex. Feb. 3, 2026) (quoting Gonzalez v. Joyce, No. 25 Civ. 8250, 2025 WL 2961626 (S.D.N.Y. Oct. 19, 2025)).  "The suggestion that government agents may sweep up any person they wish without consideration of dangerousness or flight risk, so long as the person will, at some unknown future date, be allowed to ask some other official for his or her release, offends the ordered system of liberty that is the pillar of the Fifth Amendment." Gonzalez, 2025 WL 2961626, at *5.

CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Petition for Habeas Corpus.  (Dkt. # 1.)  It is **ORDERED** that:

1. Respondents are **DIRECTED** to **RELEASE** Petitioner Edgar Hernandez Soto from custody, under conditions of release no more restrictive than those in place prior to the detention at issue in this case, to a public place by **no later than 5:00 p.m. on June 11, 2026**.  Respondents are also **ORDERED**

to return to Petitioner any personal property and identity documents upon his release.

2. Respondents must **NOTIFY** Petitioner's counsel by email (jonathanl@americangateways.org) of the exact location and exact time of Petitioner's release as soon as practicable and **no less than two hours before his release**.

3. Respondents are enjoined from further detaining Petitioner under 8 U.S.C. § 1225 without first conducting a bond hearing, scheduled with notice to Petitioner's attorneys and set at a date agreed upon by both parties.  At such a hearing, Respondents bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Petitioner's detention.

4. Respondents shall **FILE** a status report no later than **6:00 p.m. June 12, 2026**, detailing their compliance with this Order.

**IT IS SO ORDERED**.

**DATED**: Austin, Texas, June 9, 2026.

_____
David Alan Ezra
Senior United States District Judge